## THE STATE OF NEW JERSEY, PLAINTIFF, v. BERNARD B. SPINDEL, DEFENDANT.

Superior Court of New Jersey
Law Division

Decided December 3, 1956.

*Mr. Charles S. Joelson,* Deputy Attorney-General and Acting County Prosecutor, attorney for plaintiff.

*Mr. Russell T. Kerby, Jr.,* attorney for defendant.

COLIE, A. J. S. C. (temporarily assigned). This matter is before the court on the motion of defendant Bernard B. Spindel to dismiss the complaint and the arrest of defendant upon the grounds that (1) the arrest and complaint are based upon and were instituted as a result of defendant's answers to questions by a Joint Investigating Committee of the Legislature at a time when defendant was a witness before said body, so that such answers were used against defendant in violation of *N. J. S. A.* 52:13--3, and (2) on the further ground that the court does not have jurisdiction over the defendant, said defendant having been arrested at a time when he was exempt from and not subject to arrest as provided in *N. J. S. A.* 2*A*:81--21.

The facts, as gleaned from the affidavits submitted on behalf of defendant and the State, are that defendant Spindel was served on June 26, 1956 with a subpoena to appear at 10 A. M., June 29, 1956, before the Joint Legislative Committee to Study Wire Tapping and the Unauthorized Recording of Speech, hereinafter referred to as the committee. On the latter date, the committee chairman, Senator Malcolm S. Forbes, in conference with counsel to the committee, Mr. Kerby, and committee legal consultant, Mr. Cerny, "decided that the Committee still desired the benefit of Mr. Spindel's testimony and that his subpoena should be continued and adjourned from day to day until such time as Mr. Spindel could be in the State of New Jersey to testify." Prior to

September 25, 1956 Senator Forbes informed defendant "that he would be required to testify at an open hearing of the Committee in the Assembly Chambers, Trenton, N. J. on September 25." On that date Mr. Spindel appeared, was sworn and testified "* * * that in March of 1956, at the request of a chemical engineering firm located in a town adjacent to Passaic, he placed a wiretap on the telephone of said firm." The affidavit of defendant Spindel admits the acceptance of the subpoena on June 26, returnable in Atlantic City on June 29, 1956 and at any adjourned date, and that he "was advised that my subpoena was continued and adjourned * * * at a future date convenient to the Committee," that he "was advised to appear on September 25 at the State House, Trenton, New Jersey, to give testimony of my knowledge of activities of wiretapping activities in New Jersey. * * * I came into the State of New Jersey and gave testimony before the Joint Legislative Committee pursuant to the subpoena and the direction of the Committee Chairman." The affidavit of Russell T. Kerby, Jr. confirms the service on June 26 of a subpoena upon defendant, returnable June 29; that Senator Forbes, Mr. Cerny and Mr. Kerby "* * * declared that the Committee still desired the benefit of Mr. Spindel's testimony and that his subpoena should be continued and adjourned from day to day until such time as Mr. Spindel could again be in the State of New Jersey to testify." The affidavit of Mr. Cerny mainly sets up alleged facts about which he lacked personal knowledge, except in one respect. It states: "Inasmuch as Mr. Spindel did not appear at said hearing, Senator Forbes, Mr. Kerby and I decided that his subpoena should be continued and that he should be directed to appear at another hearing as soon as reasonably possible thereafter."

The proceedings before the committee on September 25 have not been produced before the court, but the affidavit of Charles S. Joelson, Deputy Attorney-General and Acting Prosecutor of Passaic County, states that at the morning session on September 25 Senator Forbes said: "Now the Committee would like to ask Mr. Bernard Spindel if he

could demonstrate to us some of the methods of tapping wires. Mr. Spindel's only connection with this Committee is that we've heard he has an extensive knowledge in the field of wiretapping and that he has consented to assist the Committee by putting on this demonstration this morning of various ways and means of doing it * * *," and at the afternoon session the following colloquy took place:

"Mr. Richman: This witness has already testified as to certain illegal activities on his part in this State.

Mr. Forbes: You are aware, I think, of the Statute under which witnesses testify before this Committee.

Mr. Richman: May I ask him, Mr. Chairman, is he under subpoena.

Mr. Kerby: No, no subpoena has been issued to my knowledge.

Mr. Forbes: However, his testimony is under oath."

At 4:10 p. m., September 25, 1956, a complaint by John Milligan, a member of the State Police, charging, on information and belief, that Bernard Spindel in 1955 (a notice to amend the complaint to read: "sometime in March, 1956" appears in the file but no order to that effect seems to have been entered in the County of Passaic) "did unlawfully tap or make a connection with a telephone wire * * * belonging to another person * * * and did make use of, etc. * * * contrary to *N. J. S. A.* 2A :146–1" etc., was presented to the court. Thereafter a warrant issued, defendant was arrested, and at 9 :15 p. m. released in custody of his counsel for appearance before the Superior Court on September 28, 1956, when the defendant was again released in custody of his counsel until the adjourned date for arraignment. Before arraignment defendant made his motion to dismiss and argument was had and briefs filed.

The defendant's first ground for the motion is based upon *N. J. S. A.* 52 :13–3.

"Witnesses summoned to appear before any committee authorized by this article or any other law to conduct an investigation or inquiry shall be entitled to receive the same fees and mileage as persons summoned to testify in the courts of the state. All such witnesses may be sworn by any member of the committee conducting the in-

vestigation or inquiry; and all witnesses sworn before any such committee shall answer truly all questions put to them which the committee shall decide to be proper and pertinent to the investigation or inquiry; and any witness so sworn who shall swear falsely shall be guilty of perjury. No such witness shall be excused from answering any such questions on the ground that to answer the same might or would incriminate him; but no answers made by any witness to any such questions shall be used or admitted in evidence in any proceeding against such witness, except in a criminal prosecution against the witness for perjury in respect to his answers to such questions.

Any witness who refuses to answer any questions decided by the committee to be proper and pertinent shall be guilty of a misdemeanor; and any witness who, having been summoned to appear before any such committee, fails to appear in obedience to the summons or, appearing, refuses to be sworn shall be guilty of a misdemeanor."

The State argues that defendant was not "summoned to appear." This argument is based upon the statement of Mr. Kerby at the afternoon session on September 25 that no subpoena had been issued to his (Mr. Kerby's) knowledge, and Senator Forbes' opening statement in the forenoon that defendant "has consented to assist the Committee by putting on this demonstration * * *." These two statements are of no weight against the uncontradicted fact that a subpoena was served upon defendant on June 26; that on June 29 the chairman of the committee adjourned the meeting until September 25 and prior to the later date so advised the defendant. It is suggested that since no minutes of the committee proceedings were produced that the affidavits should be looked at askance on the subject of adjournment. In *State v. Brewster,* 89 *N. J. L.* 658 (*E. & A.* 1916), the court recognized the procedure here followed. It said at *p.* 661:

"It may be that the minutes do not show any record of adjourned meetings from place to place, or even any resolution to convene at Trenton. The committee were acting under parliamentary rules, and usages, and it was within the power of the chairman to convene them at Trenton or elsewhere, within the state, in the absence of a continuing resolution fixing the place of meeting. *Cush. Prac. beg. Assem.* 739"

The immunity portion of *N. J. S. A.* 52:13–3, so far as we are presently concerned, reads:

"No answers made by any witness to any such questions shall be *used* or admitted in evidence *in any proceeding against such witness*, except in a criminal prosecution against such witness for perjury in respect to his answers to such questions." (Italics supplied by the court)

Was defendant's testimony used in a proceeding against him? It will be recalled that defendant testified on the afternoon of September 25 and that the complaint was filed at 4:10 p. m. and defendant arrested the same afternoon. The complaint upon which the court issued the warrant for arrest was based upon, and only upon, the testimony of the defendant when a sworn witness before the committee. We are not here concerned with a situation where the State might base the facts in the complaint on independent testimony other than that of the witness before the committee. The State's brief states that "it should be clearly understood that the State does not represent that it can produce such evidence in this case."

The court finds that by utilizing defendant's testimony as the foundation for the complaint that the State has violated that part of the immunity provision of *N. J. S. A.* 52:13–3 prohibiting its use in any proceeding against defendant.

On the basis of the facts before the court, it further holds that defendant was exempt from arrest by reason of *N. J. S.* 2A:81–21 reading in part:

"If a person comes into this state in obedience to a summons directing him to attend and testify in this state he shall not, while in this state pursuant to such summons, be subject to arrest or the service of process, civil or criminal, in connection with matters which arose before his entrance into this state under the summons."

The complaint is dismissed and the defendant discharged from arrest. An order to that effect should be submitted forthwith.